2011 Ark. 244

**STATE of Arkansas, Appellant,**

v.

**A.G., Appellee.**

**No. 10–1116.**

Supreme Court of Arkansas.

June 2, 2011.

Rehearing Denied July 27, 2011.

Dustin McDaniel, Att'y Gen., by: Leaann J. Irvin, Ass't Att'y Gen., for appellant.

William R. Simpson, Jr., Little Rock, and Brandy Turner, Public Defender, by: Thomas Kendrick, for appellee.

DONALD L. CORBIN, Justice.

This is an appeal by the State of Arkansas from an order of the Pulaski County Circuit Court transferring Appellee A.G.'s criminal case to the juvenile division of circuit court. On appeal, the State asserts that the circuit court's order granting

the transfer was clearly erroneous. We accepted certification of this appeal from the Arkansas Court of Appeals, as it involves an issue of interpretation of one of our court rules and a statute; hence, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(6) (2011). Because this is not a proper appeal by the State pursuant to Arkansas Rule of Appellate Procedure–Criminal 3 (2010), we dismiss the appeal.

Appellee was charged by felony information on May 13, 2009, with one count of arson, in violation of Arkansas Code Annotated section 5–38–301 (Supp.2009), and manslaughter, in violation of Arkansas Code Annotated section 5–10–104 (Supp. 2009). The basis of the charges related to an incident that occurred on June 19, 2008. On that date, |₂Appellee is alleged to have started a fire in the home he was sharing with his grandmother, Mary. Mary died in the fire as a result of burns to her body and heavy soot disposition in her airways. Appellee was taken to Arkansas Children's Hospital for burns to his hands and face and smoke inhalation.

Investigators determined that the fire originated in the den at the back of the house, but the exact cause of the fire was never determined. Almost a year after the incident, the State charged Appellee as set forth above. Appellee underwent a forensic evaluation, and in a report dated December 18, 2009, Dr. Ed Stafford concluded that Appellee suffered from several mood and behavior disorders but was capable of conforming his conduct to the law and was competent to stand trial.

On September 16, 2010, Appellee filed a motion to transfer his case to juvenile court. At that time he was nineteen years old. The circuit court held the required hearing on the motion to transfer. The State introduced the testimony of Officer Joshua Adams with the Sherwood Police Department. Officer Adams testified that he was involved in investigating the fire and the death of Mary. According to Officer Adams, a cigarette lighter was found on Appellee's bed, and the fire department determined that the fire started in the middle of the living room floor. Adams also stated that during the course of the investigation, he made contact with John Hughes, the brother of Mary, and great uncle of Appellee. Hughes relayed to Officer Adams that Appellee had previous behavioral issues, including issues with fires, and had been in and out of Bridgeway Hospital and Pinnacle Pointe Hospital. One time, while |₃at Hughes's home, Appellee was burning tassels on an afghan that caused a fire. Hughes also told the officer that Appellee and Mary did not get along and once Appellee told Hughes that he hated his grandmother and wished she was dead. According to reports obtained by Officer Adams, Appellee would engage in destructive behavior without regard to his or others' safety. In a report from Bridgeway, it was noted that Appellee was a homicide risk, having made statements that he wished Mary was dead. Officer Adams stated that following his release on bond, Appellee has had several other runins with the Sherwood Police Department, including an incident where he was alleged to have stolen a laptop computer from an area church and another incident involving criminal trespass, commercial burglary, and loitering.

At the conclusion of the hearing, Appellee asserted that his case should be transferred to the juvenile division of circuit court so that rehabilitation efforts could be made. The State objected, noting that Appellee was nineteen years old and could not be designated an extended-juvenile-jurisdiction offender, meaning that any juvenile-court jurisdiction would end when Appellee turned twenty-one.

In an order dated September 27, 2010, the circuit court granted Appellee's motion to transfer his case to the juvenile division of circuit court. In granting the motion, the circuit court found the following:

1.  The offenses charged, arson and manslaughter, are serious offenses.

2.  The testimony presented does not demonstrate that the offenses were committed in an aggressive, violent, and premeditated or willful manner.

3.  The offenses charged were committed against a person and property, resulting in the death of the victim.

4.  According to the testimony presented, if culpability exists on the part of the defendant, he would be solely culpable as the only participant. There does not appear to be any level of planning involved.

5.  The defendant has no prior history of being adjudicated a juvenile offender.

6.  The defendant is currently nineteen years eight months of age, and was seventeen years five months of age at the time the offenses were committed. From the evidence and testimony presented, the defendant appears to the Court to possess a low level of sophistication and maturity for his age.

7.  There are facilities available to the judge of the juvenile division of Circuit Court for a person of the defendant's age which the Court believes would be likely to rehabilitate the juvenile and before the expiration of his twenty-first birthday.

8.  The testimony presented at the transfer hearing indicates that the defendant acted alone.

9.  All evidence relating to the juvenile's mental, physical, education and social history, including the forensic evaluation and past admission reports of Bridgeway Hospital, have been considered by the Court in reaching its decision on the motion to transfer to Juvenile Court.

10. The Court does not find any other factors present in this case which it deems relevant in making its decision.

Following the circuit court's grant of the motion to transfer, the State brought the instant appeal.

As a threshold matter, this court is required to determine if an appeal brought by the State is proper. *See State v. Nichols*, 364 Ark. 1, 216 S.W.3d 114 (2005) (This court has a duty to raise the issue of the propriety of the State's appeal, even when neither party raises the issue, because it is a matter of subject-matter jurisdiction.)[1] This court has consistently noted the significant differences between appeals brought by criminal defendants and those brought by the State. *See, e.g., State v. K.H.*, 2010 Ark. 172, 368 S.W.3d 46. The former is a matter of right; whereas, the latter is not derived from either the state or federal constitution but is granted pursuant to Rule 3. *Id.* Accordingly, the State's ability to appeal is strictly limited to those circumstances described in Rule 3. *Id.* Pursuant to Rule 3, the State may appeal by filing a notice of appeal from a final order following a misdemeanor or felony prosecution or may take an interlocutory appeal in a felony prosecu-

---

1.  This case was originally filed in the court of appeals, and while in that court, A.G. filed a motion to dismiss on the basis that the State could not bring this appeal pursuant to Rule

3. The court of appeals denied that motion, and this court subsequently certified the appeal.

tion where the circuit court (1) grants a motion to suppress evidence under Arkansas Rule of Criminal Procedure 16.2, (2) suppresses a defendant's confession, or (3) grants a motion under Arkansas Code Annotated section 16–42–101(c) to admit evidence of a victim's prior sexual conduct. Ark. R.App. P.-Crim. 3(a),(b).

Clearly, in the instant matter, Rule 3 does not provide that the State may bring an interlocutory appeal from a juvenile-transfer order.[2] Nevertheless, the State contends that this is a proper appeal because it is not required to satisfy the requirements of Rule 3, as its right to appeal is specifically derived from section 9–27–318(*l*), which provides that "[a]ny party" may appeal from a transfer order. This statutory provision is in direct conflict with this court's Rule 3 that provides the specific type of interlocutory appeals that may be brought by the State, in that an interlocutory appeal from a transfer order is not one of them. This court has held that where there is a conflict between our procedural rules and a statute, statutes are given deference only to the extent to which they are compatible with our rules; conflicts which compromise those rules are resolved with our rules remaining supreme. *Shoemate v. State*, 339 Ark. 403, 5 S.W.3d 446 (1999) (per curiam); *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994).

We are not persuaded by the State's assertion that Rule 3 and section 9–27–318(*l*) are compatible. According to the State, there is no conflict between the two because the appeal does not involve the correct and uniform administration of justice, but concerns the statutorily permitted review of a transfer order. The State ignores, however, the basic notion that Rule 3 applies to any appeal by the State, unless such appeal is deemed to be civil in nature.[3] As previously stated, and as long recognized by this court, the State's right to appeal is conferred by Rule 3. *See, e.g., K.H.*, 2010 Ark. 172, 368 S.W.3d 46; *State v. Wilmoth*, 369 Ark. 346, 255 S.W.3d 419 (2007); *State v. Joslin*, 364 Ark. 545, 222 S.W.3d 168 (2006). Accordingly, the State is incorrect that Rule 3 and section 9–27–318(*l*) are compatible.

In sum, Rule 3 governs this appeal by the State and because this is not one of the types of specifically permitted interlocutory appeals allowed by the rule, we must dismiss the State's appeal.

Appeal dismissed.

BAKER, J., concurs in part; dissents in part.

BROWN, J., dissents.

KAREN R. BAKER, Justice, concurring in part and dissenting in part.

I agree with the majority opinion that the State's appeal must be dismissed. I disagree, however, with its conclusion that Arkansas Rule of Appellate Procedure–Criminal 3 (2010) and Arkansas Code Annotated section 9–27–318(*l*) (Repl.2009) are incompatible.

---

**2.** The State acknowledges that this is an interlocutory appeal, a fact made clear by our case law. *See Ventry v. State*, 2009 Ark. 300, 318 S.W.3d 576 (holding that an order granting or denying transfer of a case from one court to another having jurisdiction over juvenile matters must be challenged by way of interlocutory appeal); *see also Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002); *Hamilton v. State*, 320 Ark. 346, 896 S.W.2d 877 (1995).

**3.** We have recognized that when an appeal involves neither a direct nor an interlocutory appeal following a prosecution, but is a civil appeal arising from a collateral proceeding, the appeal is civil in nature, and the State is not required to satisfy Rule 3. *See State v. Wilmoth*, 369 Ark. 346, 255 S.W.3d 419 (2007).

Arkansas Rule of Appellate Procedure–Criminal 3 provides that the State may appeal from final orders, following either a misdemeanor or felony prosecution, or from certain interlocutory pretrial orders. Ark. R.App. P.-Crim. 3(a), (b). The State's ability to appeal is not a matter of right; rather, it is limited to those cases described under Arkansas Rule of Appellate Procedure–Criminal 3. *State v. Crawford*, 373 Ark. 95, 281 S.W.3d 736 (2008). Under Rule 3, we accept appeals by the State when our holding would establish important precedent or would be important to the correct and uniform administration of the criminal law. *See State v. Johnson*, 2010 Ark. 77, 360 S.W.3d 104. We only take appeals which are narrow in scope and involve the interpretation of the law. *Id.*

|₈Without considered analysis, the majority determines that this is an interlocutory appeal, which is governed by Rule 3(a).[1] Because a motion-to-transfer order is not one of the pre-trial orders listed in Rule 3(a),[2] the majority holds that this is not a proper State appeal. An appeal following a dismissal of a criminal case is not an interlocutory appeal. *See State v. C.W.*, 374 Ark. 116, 286 S.W.3d 118 (2008). Because the order transferring A.G.'s case to juvenile court dismissed the criminal case, it was not an interlocutory order.

However, the analysis does not end there. It is this court's duty to determine whether there is jurisdiction to hear an appeal. *Haase v. Starnes*, 337 Ark. 193, 987 S.W.2d 704 (1999). We must raise the issue even when neither party does. *State v. Nichols*, 364 Ark. 1, 216 S.W.3d 114 (2005). The majority does not determine its jurisdiction to hear the State's appeal pursuant to Rule 3(b). Rule 3(b) permits appeals from final orders. When the circuit court granted the motion to transfer the case from the criminal division to the juvenile division, the |₉circuit court no longer had subject-matter jurisdiction over the case. *C.H. v. State*, 2010 Ark. 279, 365 S.W.3d 879. The nature of the proceeding changed from criminal to civil. *See Gilliam v. State*, 305 Ark. 438, 808 S.W.2d 738 (1991) (once a case is transferred to juvenile division of circuit court, it in essence becomes a civil proceeding). An order is final for appeal purposes when it determines or discontinues the action. *Ware v. State*, 159 Ark. 540, 252 S.W. 934 (1923).

In *Thomas v. State*, 345 Ark. 236, 45 S.W.3d 818 (2001), this court said that the State had an immediate right of appeal from an order transferring a case to juvenile court. Two years after *Thomas*, the General Assembly, by Act 1166 of 2003, amended Arkansas Code Annotated section 9–27–318(*l*) (Repl.2009), to its current wording that "[a]ny party may appeal from

1. Although the majority asserts that the State concedes this is an appeal from an interlocutory order, this does not answer the question. Indeed, A.G. argues that it is not interlocutory; rather, the motion-to-transfer order is final pursuant to Arkansas Code Annotated section 9–27–318(*l*). That the order is final is consistent with this court's most recent discussion of the issue in *C.H. v. State*, 2010 Ark. 279, 365 S.W.3d 879, wherein this court held that a circuit court loses jurisdiction upon granting a motion to transfer the case to the juvenile division. In *C.H.*, this court specifically stated that the State's "proper remedy [is][sic] filing a direct and timely appeal." *Id.*

at 15, 365 S.W.3d at 886. That is exactly the same guidance given by this court in *Thomas v. State*, 345 Ark. 236, 45 S.W.3d 818 (2001), the case upon which *C.H.* relied.

2. There are three pre-trial orders from which the State may appeal: (1) order granting a motion under Arkansas Rule Criminal Procedure 16.2 to suppress seized evidence; (2) order suppressing a defendant's confession; and (3) order granting a motion under Arkansas Code Annotated section 16–42–101(c) to allow evidence of a victim's prior sexual conduct.

a transfer order." This court has long held that the General Assembly is presumed to be aware of the decisions of the Arkansas Supreme Court. *See, e.g., Riceland Foods, Inc. v. Pearson*, 2009 Ark. 520, 357 S.W.3d 434; *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997). Accordingly, it is a logical conclusion that the legislature amended Arkansas Code Annotated section 9–27–318(*l*) to reflect this court's pronouncement in *Thomas*.

The State's right to appeal from a transfer order pursuant to section 9–27–318(*l*) is compatible with Rule 3. The majority does not demonstrate how Rule 3 and section 9–27–318(*l*) are incompatible, and instead cites to *Shoemate v. State*, 339 Ark. 403, 5 S.W.3d 446 (1999), for the proposition that conflicts between a statute and our rules must be resolved in favor of our rules remaining supreme. This conclusion ignores a basic rule of interpretation that, where a statute is open to two constructions, one of which will render it unreasonable and unconstitutional, while the other will harmonize with reason, justice, and constitutional prescriptions, the latter construction will be adopted. *Stuart v. Elk Horn Bank & Trust Co.*, 123 Ark. 285, 185 S.W. 263 (1916). Although the majority does not specifically state that Arkansas Code Annotated section 9–27–318(*l*) is unconstitutional, that is in essence its holding.[3] We have said that whenever possible, we will construe a statute so that it is constitutional. *Clark v. Johnson Reg'l Med. Ctr.*, 2010 Ark. 115, 362 S.W.3d 311. It is possible to construe section 9–27–318(*l*) so that it is constitu-tional. The harmonious reading of Rule 3 and section 9–27–318(*l*) is that the State may appeal from a motion-to-transfer order, but it still must satisfy the requirements of Rule 3.

Although the State may appeal a motion-to-transfer order, resolution of the issues in this case turn on facts unique to this case. The supreme court only accepts appeals by the State when its holding would be important to the correct and uniform administration of the criminal law. Ark. R.App. P.-Crim. 3(b); *State v. Stites*, 2009 Ark. 154, 300 S.W.3d 103. Because this case does not concern issues important to the uniform administration of the criminal law, I would dismiss this appeal.

For the foregoing reasons, I concur in part and dissent in part.

ROBERT L. BROWN, Justice, dissenting.

The majority opinion strikes down part of a legislative act, Arkansas Code Annotated section 9–27–318( ) (Repl.2009), which is included in our Juvenile Code and which gives the State authority to appeal the transfer of cases from the criminal division of circuit court to the juvenile division. This provision of the Juvenile Code, which the majority nullifies, has been the law in Arkansas for over twenty-two years. Today's decision, however, not only effectively eliminates the right of State to appeal transfer decisions involving juveniles who are charged with the most serious felony offenses, such as in the case before us, but it runs counter to this court's long-standing case law. Without

---

**3.** The Arkansas Constitution divides the government into three separate departments: legislative, executive, and judicial. Ark. Const. art. 4, § 1. Legislative invasion into the province of the judicial branch is an unconstitutional violation of the separation of powers. *Ball v. Roberts*, 291 Ark. 84, 722 S.W.2d 829 (1987). While the Arkansas Constitution confers upon the courts the inherent authority to promulgate rules, it is not a violation of the separation-of-powers principles for the legislature to enact statutes pertaining to the rules. *State v. Lester*, 343 Ark. 662, 38 S.W.3d 313 (2001).

question, the discussion of whether a case belongs in the juvenile or criminal division is a preliminary determination regarding jurisdiction and not a decision on culpability for the alleged offense which would lead to the typical State appeal governed by Rule 3. Juvenile transfer proceedings to determine jurisdiction, quite simply, have always been treated differently and as special proceedings under our statutes before today. Moreover, the ripple effect from today's decision may also jeopardize a juvenile's right to appeal an interlocutory order transferring jurisdiction of a case to the criminal division, as discussed below. For all of these reasons, I dissent.

The Juvenile Code was enacted by the General Assembly in 1989. *See* Act of Mar. 1, 1989, No. 273, 1989 Ark. Acts 486 ("An Act to Establish State Policy and Procedures to be Followed in all Juvenile and Family Matters brought before the Juvenile Division of Chancery Court."). Section 17 of Act 273, now codified at Arkansas Code Annotated section 9–27–318 (Repl.2009), dealt with the transfer of cases between juvenile and circuit court. Subsection (h) of section 17 provided, "Any party may appeal from an order granting or denying that transfer of a case from one court to another court having jurisdiction over the matter." Act of Mar. 1, 1989, No. 273, 1989 Ark. Acts 518. "Any party" referred to both the State and the juvenile. This language remains in Arkansas Code Annotated section 9–27–318(*l*), which provides, "Any party may appeal from a transfer order." Ark.Code Ann. § 9–27–318(*l*).

The predecessor to Rule 3, Arkansas Rule of Criminal Procedure 36.10, was in effect at the time Act 273 was enacted in 1989. *See, e.g., Matter of Revised Rules of Appellate Procedure*, 321 Ark. 663, 900 S.W.2d 560, 564 (1995) (per curiam) (Reporter's Notes state that the rule governing state appeals was formerly Arkansas Rule of Criminal Procedure 36.10).[1] Act 273, however, made no reference to any limitations on interlocutory State appeals that were present in the predecessor to Rule 3 of Appellate Procedure–Criminal.[2]

The Juvenile Code—not the Criminal Code—sets up a special proceeding under section 9–27–318 for juvenile-transfer cases, which includes fixing the criteria for the circuit court to consider, the burden of proof (clear and convincing evidence), and the right of either party to appeal the court's decision. Moreover, Act 273 originally spoke of juvenile-transfer hearings as jurisdictional hearings. Act of Mar. 1, 1989, No. 273, 1989 Ark. Acts 517 ("The circuit court shall hold a hearing within ninety (90) days of filing of charges to determine whether to retain jurisdiction of the juvenile in circuit court or to waive jurisdiction and transfer the case to juvenile court.").

Over the years, this court has recognized either party's right to appeal a jurisdictional decision regarding transfer to a different division. For example, this court has described appeals from denials of

---

1. The Arkansas Rules of Appellate Procedure–Criminal were adopted by this per curiam. When Act 273 was enacted, Arkansas Rule of Criminal Procedure 36.10 controlled interlocutory State appeals and provided for such appeals "following a pretrial order in a felony prosecution." *In re The Arkansas Criminal Code Revision Comm'n*, 259 Ark. 863, 530 S.W.2d 672 (1975) (per curiam).

2. Notably, Act 273 did allow the prosecutor to exercise discretion to file charges against fourteen or fifteen-year-old juveniles for an alleged act constituting capital murder, murder in the first degree, murder in the second degree, kidnapping in the first degree, aggravated robbery, or rape. Act of Mar. 1, 1989, No. 273, 1989 Ark. Acts 517.

transfer motions as "interlocutory in nature" but "appealable by statute." *Hamilton v. State*, 320 Ark. 346, 350, 896 S.W.2d 877, 879 (1995) ("Since the passage of Act 273, we [members of the Supreme Court] have considered a number of cases involving transfer by way of interlocutory appeal."). This court has, in addition, implicitly recognized the State's right to appeal a juvenile-transfer motion, despite its interlocutory nature, based on the language of the statute. *See, e.g., State v. Hatton*, 315 Ark. 583, 585, 868 S.W.2d 492, 493 (1994) ("[T]he state should have appealed from the [juvenile court order refusing the accept the transfer] if it desired to challenge the juvenile judge's decision."); *Webb v. State*, 318 Ark. 581, 586, 886 S.W.2d 624, 626 (1994) ("The state, however, did not choose to appeal the transfer order, opting instead to attempt to prosecute this case in its chosen forum by the circuitous path it has followed back to circuit court.").

Even when this court has applied our appellate rules to juvenile-transfer cases, we have recognized that the Juvenile Code provides a statutory right to an interlocutory appeal of juvenile-transfer orders. *See, e.g., Beck v. State*, 317 Ark. 154, 158, 876 S.W.2d 561, 563 (1994) ("Interlocutory appeals come within this court's purview pursuant to Rule 1–2(a)(12) of the Rules of the Supreme Court and Court of Appeals of the State of Arkansas. Under Ark. Code Ann. 9–27–318(h) (Repl.1993), 'Any party may appeal from an order granting or denying the transfer of a case from one court to another court having jurisdiction over the [juvenile] matter.' "); *Sebastian v. State*, 318 Ark. 494, 495, 885 S.W.2d 882, 883 (1994) ("This interlocutory appeal is permitted by statute; jurisdiction is therefore properly in this court. Ark.Code Ann. § 9–27–318(h) (Repl.1993); Ark. Sup. Ct. R. 1–2(a)(12).").

Added to this is our case law that provides that a juvenile transfer of jurisdiction can only be challenged by way of interlocutory appeal. *Hamilton*, 320 Ark. at 350, 896 S.W.2d at 880 ("[A]n appeal from an order granting or denying transfer of a case from one court to another having jurisdiction over juvenile matters must be considered by way of interlocutory appeal, and an appeal from such an order after a judgment of conviction in circuit court is untimely and will not be considered.").

No reference in any of these cases has been made by this court to Rule 3 or to the fact that an appeal of a juvenile-transfer decision by the State was limited in any respect by Rule 3. Now, by overlaying Rule 3 onto the Juvenile Code for the first time, this court effectively prohibits the State from ever appealing a juvenile-transfer decision because, by necessity, these decision are fact intensive and do not affect the uniform administration of justice. See Ark. R.App. P.-Crim. 3(b), (c). This is so despite our clear precedent which recognizes the State's right to appeal such orders.

The ripple effect from today's decision is concerning. For example, Rule 2(c) of our Rules of Appellate Procedure–Civil provides that "appeals in juvenile cases shall be made in the same time and manner provided for appeals from circuit court." Subsection (a) of the same Rule of Appellate Procedure–Civil limits when parties may take interlocutory appeals, similar to Rule 3 of Appellate Procedure–Criminal:

(a) An appeal may be taken from a circuit court to the Arkansas Supreme Court from:

. . . .

6. An interlocutory order by which an injunction is granted, continued, modified, refused, or dissolved, or by which

an application to dissolve or modify an injunction is refused;

7. An interlocutory order appointing a receiver, or refusing to wind up a pending receivership or to take the appropriate steps to accomplish the purposes thereof, such as directing a sale or other disposal of property held thereunder;

8. An order which disqualifies an attorney from further participation in the case;

9. An order granting or denying a motion to certify a case as a class action in accordance with Rule 23 of the Arkansas Rules of Civil Procedure;

10. An order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official.

Ark. R.App. P. Civ. 2(a)(6)-(10). No mention is made in Rule 2(a) of a juvenile's right to appeal an interlocutory order of transfer. Does this mean a juvenile's right to appeal is also eliminated under the majority's theory of supersession? It would seem so. Yet, the majority |₁₆is not correct about Rule 3 because neither Rule 3 of the Rules of Appellate Procedure–Criminal nor Rule 2 of the Rules of Appellate Procedure–Civil was ever intended to cover the special proceeding for juvenile transfers under the Juvenile Code.

To conclude, Rule 3 of our Rules of Appellate Procedure–Criminal governs interlocutory State appeals in "felony prosecutions." Ark. R.App. P.-Crim. 3(a). That is not what we have here. The Juvenile Code provides a special proceeding for transfer of juvenile cases between divisions of circuit court, and in doing so, it does not conflict with out rule related to interlocutory State appeals. The ripple effect from today's decision, however, will have wide-ranging implications. For all of these reasons, I would not strike down the legislative enactment of Arkansas Code Annotated section 9–27–318( ), but instead I would harmonize that section with Rule 3. I would further recognize that section 9–27–318( ) deals with a jurisdictional appeal and not an interlocutory State appeal of a felony matter.